## Commonwealth *v*. Johnson, Appellant.

Argued November 14, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Robert N. C. Nix,* for appellant.

*Raymond V. John,* Assistant District Attorney, with him, *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, January 7, 1952:

Defendant, B. J. Johnson, was indicted in Philadelphia for murder. At the trial, following the deliberation by the jury, the verdict, as announced by the foreman, was guilty of involuntary manslaughter. Defendant then moved for his discharge on the ground that a conviction for involuntary manslaughter cannot stand where the only charge is murder. The trial judge then stated: "It was voluntary manslaughter that I submitted to you, members of the jury, not involuntary manslaughter". Whereupon, at the request of the district attorney, the jury was polled and each juror responded guilty of "voluntary manslaughter." The court then stated: "Do I understand from that, members of the jury, that each one of you has concluded that the verdict should be voluntary manslaughter, that the defendant is guilty of voluntary manslaughter as I defined that to you in my charge? You are all agreed to that, you don't want to go out and consult about it and make sure you are in agreement? Are you all in agreement?" To each of those questions the jury answered in the affirmative and the verdict as corrected then was recorded. Motion in arrest of judgment was refused and defendant was given a sentence of three to six years.

Defendant concedes the right of the court below to have the jury correct its obviously incorrect verdict before it is recorded. He questions only the fact that the court allowed the jury to correct its verdict without returning to the jury room.

This case is ruled by *Commonwealth v. Micuso,* 273 Pa. 474, 117 A. 211. There, too, defendant was indicted

for murder and the jury returned a verdict of guilty of involuntary manslaughter. The court informed the jury that no such conviction could be had under the indictment and sent the jury back to reconsider its verdict. They returned and rendered a verdict of guilty of voluntary manslaughter and this Court affirmed the conviction.

There, it is true the jury was sent back to the jury room to reconsider its verdict but that was not the essence of our decision. We stated, at page 478: "The verdict is what is announced in open court *and recorded as such* . . . and, until so announced and recorded, the jury may correct any mistake inadvertently made therein, and the court *may request* them to retire for that purpose." (Italics supplied.)

Here, the incorrect verdict was never recorded and consequently was of no effect. From the colloquy which took place after the foreman announced the incorrect verdict it is apparent that the mistake arose not out of a mistaken belief as to the law applicable, but merely from a misunderstanding of whether the trial judge in his charge had said "voluntary" or "involuntary". All agreed that they had intended to render a verdict of guilty of the type of manslaughter defined in the charge. Under these circumstances it was entirely unnecessary for the jury to return to the jury room. Had there been any doubt in the trial court's mind after he apprised the jurors of their error, he would, of course, have sent them back but the law does not go so far as to say that he must send them back when the error is immediately apparent to all of the jurors and they are all in accord as to the proper verdict.

Neither the charge, the admission and weight of the evidence nor the conduct of the trial is complained of, and an examination of the record reveals that no such complaint could have been successfully made. Defendant's sole contention that the court should have ordered

the jury to return to the jury room is, on these facts, without merit. Sentence was therefore properly pronounced on the corrected verdict of the jury.

Judgment and sentence affirmed.