Commonwealth *v.* Dzvonick, Appellant.

Argued September 28, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Arnold M. Friedman,* with him *Edward B. Friedman,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, December 19, 1972:

At 6:00 a.m., on April 15, 1969, Officer Uziel of the Borough of Glassport Police Department, drove up to the Borough Police Station. Appellant, Darrell Dzvonick, immediately came out of the station toward Officer Uziel's car with a knife held at arm's length. He lunged at the officer with the knife through the open car window, but did not "cut, stab, or wound" the officer. Appellant was immediately arrested and subsequently charged with both attempt with intent to kill[1] and assault with intent to maim.[2] He pleaded not guilty to both charges and was tried before a jury.

On September 29, 1969, the jury returned verdicts of not guilty of attempt with intent to kill and guilty on the second charge of assault with intent to maim. Appellant filed no post-trial motions. However, after a change of counsel, and appeal to the Superior Court, he was permitted to file motions for a new trial and in arrest of judgment "nunc pro tunc". The motion for a new trial was later withdrawn, and the motion in arrest of judgment was denied.

---

[1] Act of June 24, 1939, P. L. 872, §711, 18 P.S. §4711.
[2] Act of June 24, 1939, P. L. 872, §712, 18 P.S. §4712.

Appellant appealed the denial of his motion in arrest of judgment to the Superior Court which affirmed by a per curiam order. We granted allocatur.

Appellant cites three principal errors as the basis for relief on this appeal. He asserts that the verdict of guilty of assault with intent to maim as returned by the jury and recorded by the court is unsupported by the evidence and therefore his motion in arrest of judgment should have been granted. The Commonwealth concedes that the jury's verdict was not supported by the evidence,[3] but nevertheless claims that the court molded the jury's verdict to that of guilty of *attempted* assault with intent to maim. In response appellant asserts that the court did not mold the verdict to guilty of the attempt offense, nor could it have done so after discharging the jury. Finally appellant contends, arguendo, that even if the verdict was so molded it could not stand because there is no such offense as "attempted assault with intent to maim." In view of our disposition of the case we need not deal with the last challenge.

The Commonwealth claims that after the jury returned a verdict of guilty of assault with intent to maim (the completed offense), the court molded the verdict to guilty of *attempted* assault with intent to maim. However, the Commonwealth's claim of such molding is nowhere supported in the record. The following excerpt from the record establishes that the *only* "molding" which occurred was the court's insertion of the date, which the jury had inadvertently

---

[3] "Whoever . . . stabs, cuts or wounds any person, with intent to maim, disfigure or disable such person, is guilty of felony. . . ." Act of June 24, 1939, P. L. 872, §712, 18 P.S. §4712. At trial Officer Uziel testified that although he might have been touched with the knife he definitely was not cut, wounded or stabbed in any way. Thus there was no evidence to support the charge of the completed offense.

omitted. "MINUTE CLERK: Who will read the verdict? THE FOREMAN: I will. The jury finds the defendant guilty on the second count. THE COURT: All right. You find him not guilty on the first count? Is that correct? (Jury indicates affirmative.) THE COURT: We will record the verdict. MINUTE CLERK: Members of the jury, Harken to your verdict as the Court hath recorded it between the Commonwealth and the defendant Darrell Dzvonick, wherein the defendant is charged of the first count, attempt with intent to kill, and the second count, assault with intent to maim, you say you find the defendant not guilty of the first count and guilty as to the second count. I might mention to the Court the jury left out the date. THE COURT: All right. Well, we'll mold the verdict; but including today's date, there's no objection by counsel? MR. MANSMANN: No. THE COURT: We will make it September 29, 1969. (JURORS EXCUSED)"

The record discloses no other molding of the verdict whatsoever by the trial judge, either before or after the jury was excused. Moreover, once the jury has been discharged and has dispersed, the verdict can no longer be molded by the trial judge. *Commonwealth v. Martin*, 379 Pa. 587, 109 A. 2d 325 (1954); *Commonwealth v. Johnson*, 359 Pa. 287, 59 A. 2d 128 (1948); cf. *Commonwealth v. Corbin*, 215 Pa. Superior Ct. 63, 257 A. 2d 356 (1969).[4]

---

[4] The situations in which molding is permissible are severely circumscribed. They fall into two principal categories—molding prior to recording the verdict and discharge of the jury, and molding after such recording and discharge.

Prior to recording the verdict there are two accepted methods of verdict molding. See Laub, Pennsylvania Trial Guide, §244, at 416 (1959). If the jury's error is defective in form only, as here where the date was omitted, then the judge may correct it in open court with the acquiescence of the jury. *Commonwealth v. Minoff*, 363 Pa. 287, 69 A. 2d 145 (1949); see also *Newsom v. Smyth*, 261 F. 2d 452 (4th Cir. 1958), cert. denied, 359 U.S. 969, 79 S. Ct. 883

The guilty verdict returned by the jury and recorded by the court was not, and could not in the circumstances be molded.[5] Thus, appellant stands convicted of the completed offense—assault with intent to maim. Since both the Commonwealth and appellant readily concede that the "assault" verdict is not supported by the evidence, it necessarily follows that the verdict may not stand.

Accordingly, the order of the Superior Court is reversed and the motion in arrest of judgment is granted.

Mr. Justice EAGEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

I concur with the result reached by the majority but not with the reasons they offer to support their conclu-

---

(1959). However, if the error is substantive, the court must send the jury back with additional instructions for further deliberation. *Commonwealth v. Komalowski*, 347 Pa. 445, 32 A. 2d 905 (1943), citing *Commonwealth v. Huston*, 46 Pa. Superior Ct. 172 (1911); *Commonwealth v. Micuso*, 273 Pa. 474, 117 Atl. 211 (1922); see also *United States v. Henson*, 365 F. 2d 282 (6th Cir.), cert. denied, 385 U.S. 974, 87 S. Ct. 513 (1966); *Helms v. United States*, 310 F. 2d 236 (5th Cir. 1962); cf. *Glenn v. United States*, 420 F. 2d 1323 (D.C. Cir. 1969).

After the verdict has been recorded and the jury discharged, only in "extremely exceptional cases" may the verdict be molded and even then "only unless to make the corrected verdict conform to the obvious intention of the jury, i.e., to conform to a verdict actually rendered, but informally or improperly stated in writing." *Laub*, supra, at 415. After the jury has been discharged the verdict as recorded may not be molded by the trial court. See *Commonwealth v. Martin*, 379 Pa. 587, 109 A. 2d 325 (1954).

[5] The Commonwealth's theory that the court molded the verdict is an assumption that is directly contradicted by the record. Even had molding occurred it would not have constituted a permissible molding of the jury verdict; it would instead be a substitution of an entirely new verdict never found by the jury for the verdict it did in fact return.

sion. As pointed out by the Chief Justice in his dissent, the indictment, the evidence, and the charge of the court unequivocally establish that the appellant was tried for the alleged crime of *attempted* assault with the intent to maim. The fact that the verdict slip was incorrect and listed the charge as an "assault with the intent to maim" is obviously immaterial and clearly not a justification for reversing an otherwise proper verdict.

The true issue presented in this appeal is whether *attempted* assault with the intent to maim is a crime cognizable under the laws of this Commonwealth.

The crime of assault with the intent to maim was not a distinct common law crime[1] but is of statutory origin. The Act of June 24, 1939, P. L. 872, §712, 18 P.S. §4712. Section 712 provides: "Whoever unlawfully and maliciously, shoots at any person, or, by drawing a trigger or by any other manner, attempts to discharge any kind of loaded arms at any person, or stabs, cuts or wounds any person, with intent to maim, disfigure or disable such person, is guilty of felony, and on conviction, shall be sentenced to pay a fine not exceeding two thousand dollars ($2,000), or undergo imprisonment, by separate or solitary confinement at labor, not exceeding five (5) years, or both."

The legislature having already provided punishment for simple assault,[2] assault and battery,[3] and aggravated assault and battery[4] was concerned in this section with punishing an assault with a firearm or a battery

---

[1] "The so-called 'aggravated assaults' were not recognized as distinct offenses at common law. Any criminal assault was a misdemeanor and circumstances of aggravation, if present, could be taken into consideration in fixing the penalty." Perkins, CRIMINAL LAW 500 (1957).

[2] Act of June 24, 1939, P. L. 872, §708, 18 P.S. §4708.

[3] *Id.*

[4] Act of June 24, 1939, P. L. 872, §709, 18 P.S. §4709.

by cutting, stabbing or wounding where the assault or battery is accompanied by an intent to maim. The language of this section clearly discloses a legislative intention of defining an attempt to commit mayhem. The discharging of a weapon at another person as defined in this section is only distinguished from an assault as defined in Section 708 or the crime of pointing a deadly weapon[5] by the intent to maim which must accompany the act. So too a cutting, stabbing or wounding of a person is only distinguished from an aggravated assault and battery as defined by Section 709 by the intent to maim. The Act of 1860, March 31, P. L. 382, §83, contained a substantially similar provision to the present Section 712; it is therefore appropriate for one to look to the common law for a definition of the word "maim" as used in this section. BLACK'S LAW DICTIONARY 1104-05 (Rev'd. 4th ed. 1968) defines "maim" as follows: "At common law, to deprive a person of a member or part of the body, the loss of which renders him less capable of fighting; or of defending himself; to commit mayhem." Thus, if the intention required by, Section 712 is effectively accomplished the completed offense of mayhem has been made out.[6]

Further support for the conclusion that the crime described by Section 712 is an attempt to commit mayhem is furnished by the design of the statute itself. Section 712 and the two immediately succeeding sections (713 and 714) punish specific acts where there is an intent to maim followed by Section 715 which pro-

---

[5] "Whoever playfully or wantonly points or discharges a gun, pistol or other firearm at any other person. . . ." Act of June 24, 1939, P. L. 872, §716, 18 P.S. §4716.

[6] Bishop quoting Hawkins (Hawk. P.C. Curw. ed. p. 107, §1) defines "mayhem at the common law as 'a hurt of any part of a man's body whereby he is rendered less able, in fighting, either to defend himself or to annoy his adversary.'" 2 BISHOP ON CRIM. LAW §1001 (9th ed. 1923).

vides for the statutory completed offense of mayhem.[7]
The basic format employed in Section 712 covering
both assaults and batteries is seen when we read Sec-
tions 713 and 714 together. Section 714 provides for
the punishment of the assault and Section 713 provides
for the battery where these acts involve the use of
explosives or corrosive substances and are accompanied
by an intent to maim or where from the very nature
of the act the possibility of maiming is imminent. The
clear statutory scheme in dealing with this area com-
pels the conclusion that the legislature was attempting
in Sections 712, 713 and 714 to define attempts to
commit the completed offense of mayhem.

Having concluded that the crime announced in Sec-
tion 712 is itself an attempt I am obliged to find that
there cannot be a legally cognizable crime of attempt-
ing to violate Section 712. It is basic law that there
cannot be an attempt to commit an attempt. By defini-
tion an attempt "is an overt act done in pursuance of
an intent to do a specific thing, tending to the end but
falling short of complete accomplishment of it. In law,
the definition must have this further qualification, that
the overt act must be sufficiently proximate to the
intended crime to form one of the natural series of acts
which the intent requires for its full execution. So

---

[7] Section 713 provides in part: "Whoever unlawfully, wilfully
and maliciously, by the explosion of gunpowder, or other explosive
substance, burns, maims, disfigures, disables, or does grievous bodily
harm to any person, is guilty of felony. . . ." 18 P.S. §4713.

Section 714 provides in part: "Whoever unlawfully and mali-
ciously causes any gunpowder, or other explosive substance, to
explode, or sends or delivers to, or causes to be taken and received
by any person, any explosive substance, or any other dangerous
or noxious thing, or casts or throws at or upon, or otherwise applies
to any person, any corrosive fluid, or other destructive or explosive
substance, with intent to burn, maim, disfigure or disable any
person, or to do some grievous bodily harm to such person, is
guilty of felony. . . ." 18 P.S. §4714.

long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or of others' rights, they are within the sphere of intent and do not amount to attempts." (Citations omitted.) *Commonwealth v. Ellis*, 349 Pa. 402, 404, 37 A. 2d 504, 505-06 (1944). Thus, an attempt being the first step beyond preparation, an attempt to commit an attempt must necessarily fall within the realm of preparation for which our law does not attach criminal responsibility. I am not impressed with the dissent's distinction between an assault and a battery. The crime set forth in Section 712 provides for punishment of both an assault (discharging a weapon at) and also a battery (cutting, stabbing or wounding) *where either is accompanied by the requisite intent.* The basis for the rejection of the concept of an attempt to commit Section 712 does not turn on whether the overt act is the assault or the battery but rather that the offense as defined is in fact an attempt to commit mayhem.

Finally, I must also reject the argument that although the acts charged fell short of the conduct proscribed by Section 712 it nevertheless amounted to an attempt to commit the completed offense of mayhem. Here the appellant was accused of attempting to stab a police officer with a knife through an open car window with the intent to maim. While it is arguable that the act of lunging with the knife may be sufficient to remove these acts from the realm of intent and constitute common law attempt to commit mayhem it is clear that the legislature has preempted the area and ousted the court of common law jurisdiction. In an analogous situation a majority of this court stated in *Commonwealth v. Clopton*, 447 Pa. 1, 8, 289 A. 2d 455 (1972): "Turning to our consideration of legislative intent, we must determine why the legislature would define, with such specificity, the most aggravated form of the crime, this extreme being the most obvious to discern and

easiest to establish. Certainly, if our lawmakers intended that lesser acts be punishable as attempted murder, it would have made much greater sense to define the acts that would most minimally constitute the crime. At the very least, if the legislature wished that acts more remote to the completed crime were to be considered as attempted murder, it would not have defined it at all."

I, therefore, would reverse the Superior Court and grant the motion in arrest of judgment on the theory that the instant charge is not a crime punishable under the laws of this Commonwealth.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

I am compelled to dissent.

The error appealed from in this case is not the product of any event which occurred before, during or after trial which was prejudicial to the rights of the appellant. The error in this case has its genesis in the trial court's misapplication of the somewhat confusing language of Section 712 of The Penal Code.[1] Unfortunately, the decision of the majority converts what was otherwise an absolutely non-prejudicial trial court error into grounds for an arrest of judgment.

Two facts emerged from the evidence produced at trial: first, the appellant lunged at Officer Uziel in an apparent attempt to stab him; second, the intended victim was able to avoid the thrust and was never actually stabbed. Unquestionably the appellant's conduct was sufficient for the jury to find him guilty of some crime; the sole question on this appeal is whether the jury found the appellant guilty of the proper crime.

The record reveals that the verdict slip which was sent out with the jury listed the charges against Darrell Dzvonick as:

---

[1] Act of June 24, 1939, P. L. 872, §712, 18 P.S. §4712.

"1st Count—Attempts with intent to Kill

"2nd Count—Assault with intent to Maim."

The verdict returned by the jury was:

"1st Count not guilty.

"2nd Count Guilty."

Thus, on the face of the verdict slip it appears that the appellant stands convicted of the completed offense of assault with intent to maim. It is correctly pointed out by the majority and agreed to by all that the appellant cannot be convicted of the completed offense because under the language of the statute, the offense of "assault with intent to maim" requires that there be an actual stabbing, cutting or wounding of another person. Here, where there was admittedly no cutting, conviction for the completed offense was unwarranted.

However, examination of the entire record reveals that the indictment returned against the appellant actually charged him with *attempted* assault with intent to maim. Furthermore, the evidence presented at the trial, the judge's initial charge to the jury, and a supplemental charge given during the course of the jury's deliberation all show that the appellant was tried for the crime of attempted assault with intent to maim. In short, with the exception of the verdict slip, every reference to the crime committed by the appellant refers to an attempt rather than a completed offense.

As a result of the attempted stabbing, a two-count indictment was returned agaist the appellant by the grand jury. The first count, which is not in dispute, charged that the appellant "did attempt to cut, stab and wound with intent . . . to murder." The second count of the indictment charged that the appellant "did make and assault, and . . . did *attempt to* stab, cut and wound, with intent . . . then and there to maim, disfigure and disable. . . ." The words "attempt to" are emphasized not only because they clearly show that the indictment charged the appellant with *attempted as-*

sault with intent to maim, but also because they are a typewritten addition to an otherwise standard printed form used to charge other defendants with the completed crime. The only reason for the addition of the words "attempt to" was to show that the defendant was only indicted for attempted assault with intent to maim and not the completed offense.[2]

The testimony presented at the trial by both the prosecution and the defense is further proof that at the time of trial there was no ambiguity on either side concerning the subject of the trial. It is clear that neither side considered an actual cutting necessary for conviction of an attempted assault with intent to maim.

Any doubt that the appellant was tried for attempted assault with intent to maim is dispelled by the trial judge's charge to the jury delivered at the close of testimony. Even the majority opinion recognizes that the judge "specifically limited the jury's consideration to the offense of 'assault by attempting to stab, wound or cut with the intent to maim'," in which case the judge instructed the jury to find the appellant "guilty of the second count."

During the course of this deliberation, the jury sent a note to the judge asking for a definition of "maim." In the presence of counsel the trial judge explained the term and went on to explain that: "The crux of the second count of the indictment is that an assault or putting in fear by force or threat of force

---

[2] The use of the printed form indictment, while convenient in most cases, is probably one reason for the mixup in this case. Although the language in the body of the indictment was changed to reflect "attempted assault with intent to maim" as the second count, the heading of the indictment was not changed and read:

"1st Count—Attempts with intent to kill

"2nd Count—Assault with intent to maim."

Coincidentally, that is precisely the language which appeared on the verdict slip which went out with the jury.

with the intent at the time the attempt is made to [sic], there's an attempt to stab or wound or injure the person." Although this supplemental instruction is not as precise as might otherwise be desirable, its unmistakable impact is to instruct the jury to find the defendant guilty of *the second count* if they believe he is guilty of attempting an assault with intent to maim.

Thus the only logical inference which can be drawn from the jury's verdict of "2nd Count—Guilty" is that they had determined that the evidence established an attempt to maim, notwithstanding that on the verdict slip the second count had been listed as "Assault with intent to maim", the completed offense. The majority is correct in maintaining that: "A jury is without authority to find a defendant guilty of a more serious offense than that submitted to it by the court." However, in this case the jury did no such thing. Where the indictment, the evidence produced at trial and the charge of the trial judge all maintain that the "second count" is the offense of attempted assault with intent to maim, and the jury returns a verdict of guilty of the second count, there is no basis for a holding that the jury found the defendant guilty of the completed offense.

The only remaining issue to be decided was not reached by the majority, i.e., whether there is such an offense as "attempted assault with intent to maim." The appellant argues that there can be no such crime as "attempted assault" since an assault is by definition an attempt to commit a battery. However, as noted before, the crime of "assault with intent to maim" requires a touching, *i.e.,* a cutting, stabbing or wounding and is thus more akin to a battery. Disregarding the section heading,[3] it is clear from the elements of the

_____

[3] It is interesting to note that the section heading "Assault with intent to maim" was added to the offense when it was re-

offense recited in the body of the statute that, at least as far as the statute proscribes a cutting with a knife, it describes a battery. Therefore, since there can be an attempted battery, it is also possible for there to be an attempted "assault with intent to maim."

Although The Penal Code does not contain a specific section proscribing "attempted assault with intent to maim," the crime is clearly punishable under the general section which punishes attempts to commit crime. Section 1107, Act of June 24, 1939, P. L. 872, 18 P.S. §5107, provides: "If, on the trial of any person charged with felony or misdemeanor, it shall appear to the jury upon the evidence, that the defendant did not complete the offense charged, but was guilty only of an attempt to commit the crime, he shall not by reason thereof be entitled to be acquitted, but the jury may return, as their verdict, that the defendant is not guilty of the felony or misdemeanor charged but is guilty of an attempt to commit the same." The section also provides that the punishment for conviction of an attempt to commit a crime shall be exactly the same as if the conviction had been for the completed offense. As a result of his conviction in the instant case, the appellant was sentenced to from nine months to three years' imprisonment, which is within the limits allowed by Section 712 of The Penal Code, "Assault with intent to maim."

It is impossible to find any prejudice to the appellant in this case. The indictment charged him with "attempting to assault with intent to maim"; the evidence at trial was sufficient to prove an attempt; the

---

enacted in the 1939 Penal Code, Act of June 24, 1939, P. L. 872, §712. The substance of the offense, from which the present language was taken, first appeared in The Penal Code of 1860, where the offense was more correctly entitled, "Cutting and maiming with intent to disfigure." Act of March 31, 1860, P. L. 382, §83.

judge charged the jury that if they believed the appellant had attempted to assault the officer they could find the appellant guilty of the second count; and the jury returned a verdict of guilty of the second count. Since the penalty for the attempt is the same as the penalty for the completed offense, the appellant was not prejudiced by the inadvertent error which listed the second count on the verdict slip as the completed offense, "Assault with intent to maim."

I would affirm the judgment of the lower court.

Mr. Justice POMEROY joins in this dissenting opinion.