Commonwealth *v.* Wright, Appellant.

Argued April 23, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Nolan N. Atkinson, Jr.,* with him *Zack, Myers and Atkinson,* for appellant.

*Louis A. Perez, Jr.,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, March 25, 1974:

At about 3 o'clock on the morning of March 14, 1970, Lorraine Miles, a thirteen year old girl, was seen standing on the outside ledge of a fourth story window of a Philadelphia apartment house. She was calling for her brother, David. Russell Wright, the appellant, then 26 years old, was observed leaning from an adjacent window, swinging his arms towards Lorraine. Lorraine lost her balance and fell to her death.

Wright promptly left the scene of the tragedy and the jurisdiction. He was apprehended in New York City nearly two months later. He was charged and

ultimately convicted by a jury of assault with intent to ravish and of murder in the first degree. Post-trial motions were denied, and appellant was sentenced to life imprisonment on the murder charge, sentence on the other charge being suspended. This appeal followed.[1]

Viewing the testimony, as we must, most favorably to the Commonwealth,[2] the following facts appear. The apartment from the window of which Lorraine Miles fell was occupied by her and the other members of the Miles family. On the night in question, the only persons in the apartment were the decedent and six younger children: her sisters, Pamela, age 11; Carol, age 8; and Wilhelmina, age 4; her brother, Maurice David ("David"), age 12; and her cousins, Sonia, age 3 and Curtis Osborne, age 12. No adult was present. For several weeks prior to this occurrence, Russell Wright had also been staying in the apartment, sleeping on a couch in the living room. The other children slept in the bedroom.

On the night in question, Lorraine and the other younger children had had an argument, as a result of which Lorraine left the bedroom and entered the living room, which was then empty, and began to knit. Soon thereafter, Russell Wright came into the apartment from the outside. He reprimanded the children for not being in bed, and then ordered Lorraine to take off her clothes and get into bed with him. Lorraine refused, and Wright slapped her, repeating his demand. At this point, the three older children, David, Pamela and Curtis, in the fear that Wright was about to rape Lorraine, tried to enter the living room, but found the door locked. Thinking to telephone the police, the three children ran

---

[1] This Court's appellate jurisdiction is based on Art. II, § 202(1) of the Act of July 31, 1970, P. L. 673, No. 223, 17 P.S. § 211.202(1) (Supp. 1973-74).

[2] *Commonwealth v. Cimaszewski*, 447 Pa. 141, 143, 288 A.2d 805 (1972), and cases cited therein.

down the outside fire escape, which could be reached from the bedroom window, only to find that they lacked the coins to make the call. It was as they returned to the apartment building that they saw Lorraine on the window ledge, and witnessed her fall. They could not be certain whether the swinging motions which Wright was making with his arms were in an attempt to push Lorraine from the ledge or to pull her back into the apartment.

The Commonwealth's case relied principally upon the testimony of the three children who had attempted to phone the police and had witnessed the decedent's subsequent fall; their accounts of the night's events provided the jury with the facts which have been outlined above. To buttress this evidence, the Commonwealth called three witnesses to testify to previous acts of sexual misconduct by the appellant, directed to Carol, David and Lorraine. The first of these witnesses was Carol Miles, who was nine years old at the time of the trial; she testified that, four months prior to her sister's death, the appellant had taken herself, Carol, into the bathroom and performed an act of sodomy upon her. In addition to her detailed account of this event, Carol stated that she had informed her brother David of it, and that he later told Lorraine about it. Carol also testified that she had been told by David that the appellant had offered him a dollar if he would consent to an act of sodomy.

David Miles, 13 years old at the time of trial, testified that, at some point within the two weeks preceding Lorraine's death, the appellant had threatened to stab him if he would not consent to an act of sodomy. Additionally, he responded affirmatively to the Commonwealth's question as to whether he had related to Lorraine what Carol had told him and whether Lorraine had mentioned to him an incident involving herself.

The remaining evidence of prior sexual misconduct was presented by Mrs. Fannie Fannings, a volunteer community worker, who testified that, a few days before her death, Lorraine had come to Mrs. Fannings' apartment at 11:30 at night, explaining that the appellant had attempted to have some form of sexual contact with her and that she had, therefore, taken the children out of the apartment and led them to Mrs. Fannings' apartment. All of the children, including Lorraine, were in their night clothes, and the witness estimated that the walk would have taken them an hour.

The appellant contends that this testimony of prior misconduct was improperly admitted. He attacks the testimony of Carol Miles and David Miles on the ground of relevancy, and challenges the testimony of Mrs. Fannings as being impermissible hearsay; Carol's testimony concerning what she was told by her brother David is also challenged on hearsay grounds. The only part of this challenged testimony which was objected to at trial, however, was Mrs. Fannings' recounting of the decedent's declaration that the appellant had attempted sexual relations with the decedent; consequently, it is only this hearsay question which is properly before us. *Commonwealth v. Johnson,* 450 Pa. 575, 578, 301 A.2d 632 (1973); *Commonwealth v. Little,* 449 Pa. 28, 32, 295 A.2d 287 (1972); *Commonwealth v. Jones,* 446 Pa. 223, 226, 285 A.2d 477 (1971); *Commonwealth v. Nash,* 436 Pa. 519, 521, 261 A.2d 314 (1970).

Had Mrs. Fannings' testimony been presented to prove that the appellant had attempted to assault the decedent sexually a few nights before the events in question, then her recounting of the decedent's statement to that effect would have violated the hearsay rule[3] and would thus have been inadmissible unless it came with-

---

[3] McCormick, *Evidence,* § 246 (2d ed. 1972); 5 Wigmore, *Evidence,* § 1361 (3d ed. 1940).

in a recognized exception to that rule.[4] We note, however, that the trial judge, in his charge to the jury, specifically limited consideration of Lorraine's statement to Mrs. Fannings to the decedent's state of mind when she stepped onto the window ledge; thus, this evidence was admitted not for the purpose of showing that the defendant did what Lorraine claimed he had done, but solely to demonstrate Lorraine's reaction to what she perceived to be a sexual advance on the part of the appellant.

When limited to this purpose, Lorraine's statement is not hearsay. The hearsay rule does not apply to all statements made to or overheard by a witness, but only those statements which are offered as proof of the truth of what is said.[5] Thus, a witness may testify to a statement made to him when one of the issues involved is whether or not the statement was, in fact, made. *Commonwealth v. Lopinson,* 427 Pa. 284, 306, 234 A.2d 552 (1967); *Commonwealth v. Bonomo,* 396 Pa. 222, 225, 151 A.2d 441 (1959); *Commonwealth v. Ricci,* 332 Pa. 540, 545, 3 A.2d 404 (1939). Similarly, a witness may testify to statements made by another to the witness or to a third person when the purpose of this testimony is to evidence the effect which the statement had upon the listener. *Commonwealth v. Ricci, supra* (witness testified to a statement of a third party which accounted for the witness' hesitancy in identifying the defendant); *Commonwealth v. Williams,* 307 Pa. 134, 140, 144, 160 A. 602 (1932) (wife testified to husband's emotional

---

[4] *Carney v. Pennsylvania R.R. Co.,* 428 Pa. 489, 492-93, 240 A.2d 71 (1968).

[5] *Commonwealth v. Sampson,* 454 Pa. 215, 217, 311 A.2d 624, 626 (1973); *Commonwealth v. Williams,* 307 Pa. 134, 144, 160 A. 602 (1932); *Commonwealth v. Santos,* 275 Pa. 515, 522, 119 A. 596 (1923); *Ryman's Case,* 139 Pa. Superior Ct. 212, 221, 11 A.2d 677 (1940); McCormick, *Evidence,* § 249, 588 (2d ed. 1972); 6 Wigmore, *Evidence,* § 1766, 177-78 (3d ed. 1940).

response to statement by a third party) ; *Commonwealth v. Douglass*, 185 Pa. Superior Ct. 269, 275, 138 A.2d 193 (1958) (witness testified to threat made by third party in order to account for her failure to identify the defendant at the preliminary hearing).

Coming more directly to the statements here involved, out-of-court statements which are offered to prove the declarant's state of mind are not within the interdiction of the hearsay rule.[6] For example, when the declarant's sanity or competency are in issue, statements indicating the presence or absence of either of these mental traits are properly received as evidence. *Commonwealth v. Williams, supra; Ryman's Case*, 139 Pa. Superior Ct. 212, 221, 11 A.2d 677 (1940) (defendant's business conversations and statements about wife and children admissible on the issue of the declarant's competency). In murder cases, statements by the decedent evidencing an intent to commit suicide are admissible when facts are presented which would support the defense of suicide. *Commonwealth v. Donough*, 377 Pa. 46, 54, 57, 103 A.2d 694 (1954) ; *Commonwealth v. Santos*, 275 Pa. 515, 521, 119 A. 596 (1923). Similarly, threats by a decedent against a defendant are admissible in support of a claim of self-defense. *Commonwealth v. Santos, supra*, at 520. See also *Commonwealth v. Principatti*, 260 Pa. 587, 594, 104 A. 53 (1918) (decedent's threats against the defendant admissible to show that the decedent was the aggressor, even though those threats had not been communicated to the defendant).

In the present case, regardless of whether the appellant made a sexual advance towards Lorraine Miles on the night on which she spoke to Mrs. Fannings, Lorraine's statement evidenced her apprehension of such

---

[6] McCormick, *Evidence*, § 249, 590-91 (2d ed. 1972) ; 6 Wigmore, *Evidence*, § 1715, 60-61 (3d ed. 1940).

an advance and her determination to escape from it. Such evidence is competent to show her state of mind just as business conversations evidence the business competency of the conversing parties and just as threats reveal the apprehension of the person threatened and the intentions of the person threatening. As long as this state of mind is a factor in issue,[7] the decedent's statement which bears upon it is admissible evidence, and not hearsay.

It is clear that the decedent's state of mind on the morning she fell to her death, i.e., her terror at the prospect of a sexual assault by the appellant and her determination to resist it, were important factors in determining the culpability of the appellant. The Commonwealth sought a conviction of first degree murder under the felony murder doctrine, which has been limited by statute in Pennsylvania to killings committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or kidnapping.[8] We have held that the felony murder doctrine does not apply to every death which coincides with a felony, but only to those deaths which are caused by the defendant or his co-conspirators. *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 227-28, 261 A.2d 550 (1970); *Commonwealth v. Redline*, 391 Pa. 486, 495-96, 137 A.2d 472 (1958). Moreover, an accused cannot be held to have caused a death where the death results from an independent action of a decedent. *Commonwealth v. Root*, 403 Pa. 571, 578, 170 A.2d 310 (1961).

Thus, the Commonwealth in this case was obliged to prove that the decedent placed herself in a dangerous

---

[7] *Commonwealth v. Bonomo, supra,* at 226; *Commonwealth v. Donough, supra,* at 56.

[8] Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701 (1963), superseded by the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa. S. § 2502 (1973). *Commonwealth v. Redline*, 391 Pa. 486, 494, 137 A.2d 472 (1958).

position on the window ledge because she was forced to do so by the appellant's attempt to rape her; he could not be found guilty of felony murder if the decedent's perilous conduct was an act which she freely performed, such as, for example, an independent act of adolescent foolhardiness. The decedent's statement to Mrs. Fannings, expressing her fear that the appellant was attempting to engage in sexual relations with her, was highly probative of what was running through Lorraine's mind a few days later when the appellant made an explicit sexual advance. When limited to proving this state of mind, the challenged statement was not hearsay.

Accordingly, we find the only assignment of error which was properly preserved by the appellant to be without merit. The judgment of sentence is affirmed.