370 A.2d 317

COMMONWEALTH of Pennsylvania

v.

**Lindred Dean CRAIG, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1976.

Decided Feb. 28, 1977.

John J. Dean, John R. Cook, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Louis R. Paulick, Thomas M. Lilly, Asst. Dist. Attys., Robert A. Zunich, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

On June 20, 1973, Wilbert O. Brooks was fatally stabbed. Appellant, Lindred Dean Craig, and Brooks had fought twice earlier that evening. Twenty minutes after the last fight, they again met on the street. Another scuffle ensued, decedent staggered and fell, and appellant ran from the scene. Appellant was tried and convicted by a jury of murder in the first degree. After denying post-trial motions, the court imposed a sentence of life imprisonment. This direct appeal followed.[1]

1. Jurisdiction in this matter is conferred by statute. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976).

Appellant asserts two arguments as grounds for reversal: first, that the trial judge abused his discretion in refusing a motion for a mistrial; and second, that the evidence is insufficient to sustain a conviction of murder in the first degree.

Appellant's first argument is that the trial court abused its discretion in refusing to grant the motion for a mistrial which was based upon the jury's returning a defective verdict and the allegedly prejudicial effect of a spectator outburst upon its subsequent deliberations. The jury foreman announced the verdict in these words: "We, the jurors . . . find the defendant first count of murder guilty." Apparently, at this announcement, there was a spontaneous expression of approval by one or more of the spectators. However, the court was preoccupied with the defects in the announced verdict. When questioned by the court, the foreman indicated that the issue of degree was overlooked in its deliberations. The court informed the jury that its verdict was improper for that reason, reiterated the possible degrees of guilt, and returned the jury for further deliberations.[2]

2. The following exchange was recorded subsequent to the announcement of the verdict:
"THE COURT: Mr. Recktenwald, I believe, is the foreman?
THE CLERK: Will you stand up, please?
THE COURT: Did you deliberate on the degree of murder? Did you miss in my charge the fact if you found the defendant guilty of murder, then you must determine the degree of murder, either first degree or second degree?
JURY FOREMAN RECKTENWALD: I think maybe we did overlook that, sir.
THE COURT: All right. Well, the verdict as it now stands is improper as exactly as stated by the foreman: We the jurors impaneled in the above-entitled case find the defendant first count murder guilty. But they have not designated the degree of murder. So at this point I think the proper thing to do is to return the jury to the jury room for the purpose of deliberating further, and if upon further deliberation you find the defendant guilty of murder, then you must designate the degree of murder, either first degree or second degree. All right. Now if after deliberation you find the defendant not guilty of murder, then you must move to the other counts in the indictment, voluntary manslaughter and involuntary manslaughter.
THE CLERK: Please take the jury back out for further deliberations."

The jury came back with a verdict of guilty of murder in the first degree.

Appellant argues that the expression of approval by the audience which accompanied the initial verdict influenced the jury's further deliberations as to degree and, therefore, a mistrial should have been granted. Initially, it should be noted that the court acted properly when it returned the jury for a determination of degree of guilt. To correct an error of substance in a verdict prior to its recording, the court may send the jury back with additional instructions for further deliberation. *Commonwealth v. Dzvonick,* 450 Pa. 98, 297 A. 2d 912 (1972); *Commonwealth v. Johnson,* 369 Pa. 120, 85 A.2d 171 (1952); *Commonwealth v. Komatowski,* 347 Pa. 445, 32 A.2d 905 (1943); *Commonwealth v. Troup,* 302 Pa. 246, 153 A. 337 (1931). A motion for mistrial is addressed to the discretion of the court. *Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970). In the area of bystander misconduct, we have held that it is primarily within the trial judge's discretion to determine whether the defendant was prejudiced by the misconduct. *Commonwealth v. Garrison,* 443 Pa. 220, 279 A.2d 750 (1971). Our review satisfies us that the court did not abuse its discretion in denying this motion. The record contains several characterizations of the nature of the audience reaction including one by the court that someone approved of the decision.[3] In the opinion of the

3. After the jury left the courtroom, the audience reaction was brought to the court's attention:
"MR. LITMAN: With regard to the said verdict I would ask for a mistrial under these circumstances, not only because of the jurors' improper finding, but also because of the response of the spectators in the Courtroom when the verdict was read.
MR. VOGRIN: Your Honor, my response to that would be the noise in the Courtroom, I don't know who made it, and defense counsel can disagree with me, I don't think it could be called an outburst, or anything like that. It didn't sound like any more than one individual to me.
MR. LITMAN: It sounded like a cheer to me.
THE COURT: Well, I was preoccupied myself, quite frankly. I didn't notice from whence the outcry came, and as to how one would designate it if you had to apprise it. I do have an

court below, it is described as "a spontaneous expression, neither loud nor combined with any overt conduct. . . . Even the trial judge was unaware of this incident until brought to his attention." There is no indication that the jury was any more aware of the incident. Nor is there any indication that the jury was in any manner influenced by the incident. Within eleven minutes, the jury had completed its second deliberation. The court further questioned the foreman when the jury returned. The gist of this colloquy is that the question of degree had been decided in the first session but, through oversight, the original verdict was misworded.[4] On this

impression that somebody, from what I heard, did favor the decision as it was made.

MR. LITMAN: Yes, Your Honor.

THE COURT: I am going to deny the motion."

4. The colloquy was as follows:

THE COURT: All right. Ladies and gentlemen of the jury, I am going to direct a question to the foreman, juror number seven, Mr. Recktenwald. Mr. Recktenwald, initially as foreman at 3 o'clock p. m. you reported to this Court that the jury had reached a verdict, and that verdict was reported as guilty of count one, murder. The jury was ultimately returned to the jury room for further deliberations on this matter. Now, I would like to ask you this question: In your original deliberations, and you are speaking with the jury, did the jury deliberate on the matter of the degree of count one, murder originally?

JURY FOREMAN: On count one, yes.

THE COURT: They did?

JURY FOREMAN: They did.

THE COURT: Is there any reason why the degree of the crime was not represented on the verdict slip as you originally reported it?

JURY FOREMAN: Other than maybe just a miswording, sir.

THE COURT: Well, could you explain that further?

JURY FOREMAN: Well, in going back we had discussed it that it should have been first. Other than that I don't know why, sir. It was just a miswording.

"THE COURT: Was it an oversight as to the assessing the degree of the crime, and necessary for further deliberations, or had you in fact deliberated on the question of degree of the crime?

JURY FOREMAN: I can't say—From looking at the form we assumed the charges, and it says first count. We just assumed that there was no other degree to go on from there, I guess. We felt that it was it, that it was the highest you could go.

record, we cannot conclude that the trial court abused its discretion by refusing to grant the mistral motion.

■ Appellant's second argument is that the evidence was insufficient to sustain a conviction of murder in the first degree. We have previously articulated the principles which guide our review in such cases.

"The necessary feature of nonfelony murder in the first degree is the presence of a willful, premeditated and deliberate intent to kill. In establishing the presence of a specific intent to kill, the Commonwealth is not required to depend upon proof by direct evidence, but may meet its burden by circumstantial evidence alone. 'The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom . . . ' *Commonwealth v. Ahearn,* 421 Pa. 311, 318, 218 A.2d 561, 565 (1966). See also, *Commonwealth v. Williams,* 455 Pa. 539, 546–47, 316 A.2d 888 (1970); *Commonwealth v. Fostar,* 455 Pa. 216, 220–221, 317 A.2d 188 (1974). The task of an appellate court in reviewing the sufficiency claim is to determine whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury

THE COURT: Are you telling me that you didn't discuss the matter of degrees of the crime of murder in your original deliberation?

JURY FOREMAN: I guess I can only say we didn't say the word degree. We felt that it said first count, and we thought that it was—

THE COURT: I am not talking about what you put on the form. I want to refer back to your deliberations with the other members of your jury, the other eleven members. Now, in those deliberations before you arrived at a decision to find the defendant guilty of murder had you and your fellow jurors discussed the matter of the degree of the crime?

JURY FOREMAN: We discussed it on the basis that there was definite intent as far as we were concerned.

THE COURT: All right. Is there anything further that counsel would like to discuss with the Court at this point?"

could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams, supra; Commonwealth v. Fostar, supra; Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972)." *Commonwealth v. Bundy,* 458 Pa. 240, 243–44, 328 A.2d 517, 519 (1974). *See Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976). The evidence must be read in a light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Long,* 460 Pa. 461, 333 A.2d 865 (1975). Upon a review of the record, we conclude that the evidence is sufficient to sustain the conviction. Appellant and the victim had fought previously on the evening of the stabbing. During these scuffles, appellant was heard to make threats to kill the victim while the victim repeatedly expressed his unwillingness to fight. When the two met again, a third fight ensued. Witnesses saw the two men grapple, the victim stagger away, fall to the ground, and the appellant run away. When the detective arrived on the scene, he was told that the appellant did it. A medical examination revealed that death was caused by the puncturing of the organs in the upper left chest by a sharp instrument.

Judgment of sentence affirmed.

NIX, J., took no part in the consideration or decision of this case.

ROBERTS, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. I conclude that on the facts of this case the trial court abused its discretion in failing to grant a mistrial in view of the fact that no supplemental instruc-

tions regarding distinctions between first and second degree murder were given, and the trial court failed to take any precautionary measures to minimize any possible prejudicial effects of the outburst by courtroom spectators.

The majority opinion fails to mention that the verdict slip in this case contained the following options:

COUNT ONE—murder, COUNT TWO—voluntary manslaughter, COUNT THREE—involuntary manslaughter. The slip did not distinguish between first and second degree murder in Count One.

When the foreman of the jury announced that they had found the defendant guilty of the first count of murder, (as opposed to second count of voluntary manslaughter and third count of involuntary manslaughter) the trial judge queried the foreman as to the degree of murder. The following discussion took place:

"THE COURT: Was it an oversight as to the assessing the degree of the crime, and necessary for further deliberation, or had you in fact deliberated on the question of degree of crime?

JURY FOREMAN: *I can't say*—from looking at the form we assumed the charges, and it says first count. We just assumed that there was no other degree to go on from there, *I guess.* We felt that it was it, that it was the highest you could go." (Emphasis added.)

It is obvious from this discussion that the jury *did not* understand the original charge as to distinctions between first and second degree murder. It is also obvious that they did not deliberate as to the degree of guilt prior to returning the defective verdict. At this point the trial court should have given *supplemental instructions* prior to further deliberations by the jury. *See Commonwealth v. Dzvonick,* 450 Pa. 98, 297 A.2d 912, 914, n. 4 (1972).

In *Commonwealth v. Komatowski,* 347 Pa. 445, 32 A. 2d 905, 910 (1943) this Court noted:

"When a jury tenders a verdict which is defective in substance, uncertain, repugnant, or not responsive to the issue, it is proper for the court to reject it, as not warranted by law, call the attention of the jury to the defect, instruct them as to the form of verdict in case they mean to acquit or convict the defendant and send them back to their room where they can, *untrammeled by the presence and influence of others,* find such verdict as they think proper." (Emphasis added.)

Since the "spontaneous expression of approval" by one or more spectators in this case occurred when the jury was in the middle of its deliberations, I cannot conclude that they were "untrammeled by the presence and influence of others" in reaching their ultimate verdict. At the very least, the trial court should have cautioned the jury with respect to the prejudicial outburst. *See Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970).

The only thing that we can be certain of in this case is that the defendant was found guilty of murder. Accordingly, the only proper judgment is the lowest degree of murder,—second degree.