412 A.2d 531

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas TOMONEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 21, 1980.

Decided March 20, 1980.

Henry J. Lunardi, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Kenneth Gallant, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On March 29, 1977, Joseph Williams was fatally stabbed by Thomas Tomoney. On October 4, 1977, Tomoney was found guilty of murder of the first degree by a jury in the Court of Common Pleas of Philadelphia. Post-verdict mo-

tions were denied on April 13, 1978, and Tomoney was sentenced to life imprisonment. This appeal followed.

Tomoney advances five assignments of error, all of which are without merit.

■ Tomoney initially contends the verdict of murder of the first degree is not supported by the evidence. The test used to determine whether the evidence presented is sufficient to sustain the conviction is:

> "[W]hether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt."

*Commonwealth v. Waldman,* 484 Pa. 217, 222, 398 A.2d 1022, 1024–25 (1979) (citing cases).

Viewed in this manner, the evidence established the following:

On March 18, 1977, Tomoney and two other black males engaged in an altercation with Williams during which Tomoney stabbed Williams with a screwdriver. Immediately before the stabbing, Tomoney had stated he "had to get a body" because of an earlier killing at a brickyard.[1] Tomoney was taken into police custody after this particular stabbing, but Williams declined to identify Tomoney as his assailant when questioned by the police at the hospital. Williams told his brother that he would not press charges out of fear of retaliation.

On March 29, 1977, Tomoney, his brother, and a third black male approached Williams who was standing on a street corner with two other people. When he saw Tomoney approach, Williams picked up a foot-long piece of thin metal which he secreted in his sleeve. Tomoney asked to speak with Williams, but was rebuffed. Tomoney then pulled a knife from his shirt and stabbed the deceased in the chest without Williams having displayed his weapon or having made a move to attack Tomoney. When Williams' mother

1. Tomoney testified the victim of that killing had been his cousin.

reached the scene, Williams told her he had been stabbed by "Tommy Dirt" (Tomoney's nickname) and later, at the hospital, told her he had been stabbed by "the same dude who had stabbed me before." The stab wounds were determined to be the cause of Williams' death.

Murder of the first degree is statutorily defined as "a criminal homicide . . . committed by an intentional killing." 18 Pa.C.S.A. § 2502(a) (Supp.1979–80). Intentional killing is defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d) (Supp.1979–80). Since the specific intent to kill may be inferred from the assailant's words or conduct or from the attendant circumstances, *Commonwealth v. Craig*, 471 Pa. 310, 315, 370 A.2d 317, 320 (1977) (citing cases), it is clear that the evidence presented here was sufficient to support a verdict of murder of the first degree. While it is true that the trial testimony of Tomoney could lead to the conclusion that he acted in self-defense or in the heat of passion and, thus, preclude a finding of guilt of murder of the first degree, Tomoney's credibility and the facts of the occurrence were for the jury.

Secondly, Tomoney complains the trial court erred in failing to order the district attorney to elect whether this was a capital case before the trial commenced. In chambers, prior to jury selection, Tomoney's counsel asked the court to order the district attorney to elect whether or not the case was capital. He reasoned Tomoney's age (sixteen) and lack of education were patent mitigating factors which would compel a jury to select a sentence of life imprisonment, rather than death. Counsel further argued an election was necessary in order to prevent the Commonwealth from gaining an unfair advantage which could result from the district attorney removing the issue of the death penalty during trial.[2] The district attorney refused to make a pretrial

---

**2.** Tomoney contends that, if the jury is determined on voir dire to be capable of imposing the death penalty, starts the trial with the mind that this is a capital case, and is subsequently told it does not "have

election, and the court refused to order him to do so. Not only was the court's refusal to grant defense counsel's request proper, but the court was not empowered to order such an election.

Our decision in *Commonwealth ex rel. Fitzpatrick v. Bullock* [hereinafter: *Bullock*], 471 Pa. 292, 370 A.2d 309 (1977), aids in the resolution of the present issue. In *Bullock*, a murder prosecution, the trial court conducted pretrial proceedings after which it found the case non-capital due to the defendant's youth and lack of maturity at the time of the crime. On appeal from that order, this Court held that 18 Pa.C.S.A. § 1311 (Supp.1979–80) requires "the initial determination of the presence or absence of aggravating and mitigating circumstances in a jury trial for murder be made *by the jury* after it has convicted the defendant of murder of the first degree." [Emphasis in original.] *Bullock*, supra, 471 Pa. at 303, 370 A.2d at 314. We disapproved the trial court's pretrial determination that mitigating circumstances existed and its resulting certification of the case as non-capital.

If a court may not make a pretrial determination of whether a case is properly capital or non-capital because the legislature has directed the jury to initially determine the existence of aggravating and mitigating circumstances and, thus, the propriety of the death penalty, it logically follows that a court may not order the prosecution to make such a determination.

Moreover, in *Bullock* we rejected the contention that pretrial certification of a case as capital or non-capital was desirable due to the "strong possibility" that a "death-qualified" jury would be conviction prone. We said that "[t]he requirement of individual voir dire in a capital case should give a defendant ample opportunity to explore for and isolate such bias." [Citations omitted.] *Bullock*, supra, 471 Pa. at 302 n. 8, 370 A.2d at 313–14 n. 8.

to worry about the death penalty," this "predisposes the jury to come in with a guilty verdict."

■ Thirdly, Tomoney insists the trial court erred in denying a requested voir dire question which was designed to detect conviction bias. This question was phrased as follows:

"The District Attorney has indicated that he might seek the death penalty in this case, and you have indicated a willingness and an ability to impose the death penalty in a proper case. Since you feel this way about the death penalty, do you think you would tend to favor the prosecution in a case like this one if the prosecution later on decided *not* to seek the death penalty? Cf. *Comm. v. Roach*, 444 Pa. 368, 282 A.2d 382 (1971)." [Emphasis in original.]

We need not determine whether this hypothetical question would be proper on voir dire because in this instance no prejudice could have resulted from its denial. Tomoney does not contend, and the record does not indicate, that the district attorney informed the jury in this case of his intention to seek or not seek the death penalty. Since the factual situation on which the question was based did not occur, the denial of the voir dire question could not have resulted in prejudice. Hence, the court's ruling is not reversible error.

Tomoney next contends the trial court erred in permitting decedent's nephew, Donald Hodges, to testify to an incident on March 18, 1973. This testimony established that, during that incident, Tomoney had stated that he "had to get a body" due to an earlier killing and, shortly thereafter, stabbed the decedent with a screwdriver.

It is undisputed that the testimony in question was relevant as proof of motive,[3] see *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977), but it is asserted that it was unnecessary and so inflammatory that its probative value was far outweighed by the resulting prejudice.

3. Hodges' testimony indicated Tomoney had a desire to retaliate for an earlier killing which may have been unfulfilled by the first incident and also indicated hostility or ill-will between Tomoney and Williams by virtue of that incident.

Although proof of motive is not necessary to establish the specific intent to kill essential to a finding of murder of the first degree, it is probative evidence of such an intent. See *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976); cf. *Commonwealth v. Boyle,* 470 Pa. 343, 368 A.2d 661 (1977). Moreover, Hodges' testimony was not merely cumulative since he was the only witness to the initial stabbing, other than Tomoney, who testified, and his was the only testimony concerning Tomoney's statements during that incident. Viewed in this light, we cannot say the trial court abused its discretion in determining that the probative value of this testimony was not outweighed by any prejudicial impact. See *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972); cf. *Commonwealth v. Ulatoski,* supra.

Tomoney's fifth allegation of error also pertains to Hodges' testimony. He claims the trial court erred in failing to declare a mistrial when Hodges testified the police had "[l]ocked them [Tomoney and his two companions] up" after the stabbing incident on March 18, 1977. We cannot agree.

Evidence of a defendant's prior arrest or incarceration is generally inadmissible because the trier of fact may infer past criminal conduct by the defendant from such evidence. *Commonwealth v. Clark,* 453 Pa. 449, 309 A.2d 589 (1973); accord *Commonwealth v. Martin,* supra; *Commonwealth v. Irwin,* 475 Pa. 616, 381 A.2d 444 (1977). Yet, we have already determined that evidence of the conduct which precipitated Tomoney's being taken into custody was properly admitted. Since the reference to Tomoney's having been "locked . . . up" would only be inadmissible for implying underlying criminal conduct and evidence of the underlying conduct here has been found admissible, the trial court did not err in denying a mistrial.

Finally Tomoney contends the trial court erred in permitting Fred Williams, the victim's brother, to testify during rebuttal that, immediately after the incident of March 18, 1977, his brother told him he wasn't going to press charges against Tomoney due to fear of retaliation. Tomo-

ney asserts that this testimony was introduced to show that *he*, Tomoney, intended to retaliate for the earlier incident and, in any case, does not foreclose an intention on the victim's part to kill him in retaliation for the earlier incident. He thus concludes this testimony was *too* speculative, collateral, and prejudicial to be properly admitted. Again, we cannot agree.

The record shows this testimony was offered and admitted to show the victim's reason for not identifying Tomoney as his assailant on the 18th.[4] It was relevant to rebut the inference that Williams refused to identify Tomoney because he, Williams, was planning a private revenge. This inference would have supported Tomoney's contention that he acted in self-defense on the 29th and arose from his testimony that, after the March 18th incident, Williams had been telling people he "was going to off [kill] him" and that Williams had attacked him without provocation on the 29th. While the victim's statement to his brother is certainly not conclusive with regard to his intent eleven days later at the time of the fatal stabbing, it was not so remote that its probative value was negated. Tomoney's argument thus relates to the weight to be afforded the evidence and not to its admissibility. Hence, the trial court did not abuse its discretion in admitting this testimony.

Judgment of sentence affirmed.

KAUFFMAN, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

I join the majority opinion with the understanding that nothing in *Commonwealth ex rel. Fitzpatrick v. Bullock*, 471

---

4. At trial appellant conceded the "state of mind" exception to the hearsay rule applied to this evidence, and he does not now dispute its applicability. See *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978); *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974); McCormick, *Evidence*, § 249, 590–91, § 294, 694–96 (2nd ed. 1972).

Pa. 292, 370 A.2d 309 (1977), or this opinion denies the prosecution the opportunity to elect to remove the death penalty from the case.