Commonwealth *v.* Bundy, Appellant.

Argued September 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

*John R. Cook*, Assistant Public Defender, with him *John J. Dean*, Assistant Public Defender, and *George H. Ross*, Public Defender, for appellant.

*J. Kent Culley*, Assistant District Attorney, with him *Robert L. Eberhardt*, Assistant District Attorney, and *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, November 20, 1974:

Appellant, John Bundy, was indicted on charges of murder and involuntary manslaughter. Prior to trial

a motion to suppress evidence was filed, heard and denied. Thereafter, trial was had before a judge and jury and appellant was adjudged guilty of murder in the first degree and sentenced to imprisonment for life. Motions for a New Trial and in Arrest of Judgment were denied and this direct appeal follows.

The first assignment of error addresses the sufficiency of the evidence. The testimony offered by the Commonwealth tended to establish that on February 24, 1972, at approximately 2:00 A.M., Marianne Smith was murdered at her residence on Buena Vista Street, Pittsburgh, Pennsylvania. Death was attributed to two gunshot wounds resulting in thoracic and retroperitoneal injuries. The autopsy also revealed that at the time of death the victim was pregnant.

A ballistics expert with the City and County Crime Laboratory, testified that the bullets removed from the decedent's body were from a .38 caliber weapon and determined to have been fired from the same weapon as a bullet found in a wooden plaque in Ms. Smith's kitchen. The deceased is reported to have stated to her estranged husband that an unknown assailant had discharged a weapon through her kitchen window approximately a week before the killing.

The decedent's aunt testified that she spoke with the appellant less than a month prior to the homicide, at which time the appellant threatened to kill her niece: "I love your niece and she made a fool of me and I'm going to kill her." Officer Ronald Freeman stated that during the questioning of the appellant, Bundy acknowledged that he had been "going with" the deceased for seven or eight months and admitted on several occasions beating Ms. Smith. Furthermore, Bundy admitted that Ms. Smith expressed the desire that she wanted nothing further to do with him after he had refused to give her money for an abortion. Officer William McGinley testified that on January 31, 1972,

the deceased signed a complaint against the appellant for aggravated assault and battery arising out of an incident upon a highway in which the appellant had forced the car in which Ms. Smith had been riding off the road and subsequently pulled her from the car punching and slapping her about the face.

Officer Thomas Sessions testified that on the evening of February 23, 1972, at approximately 10:00 P.M., he responded to an automobile accident involving Bundy on Buena Vista Street about one-half block from the Smith residence. At this time he testified that the appellant was wearing a dark trench coat. Also observing the accident was Jacqueline Jennings who occupied the second floor of the duplex building in which Ms. Smith resided. Jennings testified she knew the appellant and was able to observe the clothing which Bundy was wearing at the scene of the accident. Further, she testified that after having retired at approximately 12:15 A.M. or 12:30 A.M., she was awakened by the sound of breaking glass and "a noise" similar to that of firecrackers. She immediately arose and went to her window overlooking the street whereupon she saw a man on the steps leading to the decedent's apartment. She identified that individual as the appellant and stated that he was wearing the same clothing that she previously observed at the scene of the accident.

A criminologist for the Crime Laboratory testified that the trench coat worn by the appellant contained fibers identical to the fabric of an olive-colored, wool blanket and a pink rayon blanket found on the decedent's bed at the time she was shot. Finally, Bundy, himself testified that he had on prior occasions made threats on the life of Ms. Smith and at one time owned a .38 caliber weapon which he alleges was stolen from his car prior to February 24, 1972.

The necessary feature of non-felony murder in the first degree is the presence of a willful, premeditated

and deliberate intent to kill. In establishing the presence of a specific intent to kill, the Commonwealth is not required to depend upon proof by direct evidence, but may meet its burden by circumstantial evidence alone. "The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom . . ." *Commonwealth v. Ahearn*, 421 Pa. 311, 318, 218 A.2d 561 (1966). See also, *Commonwealth v. Williams*, 455 Pa. 539, 546-47, 316 A.2d 888 (1970); *Commonwealth v. Fostar*, 455 Pa. 216, 220-221, 317 A.2d 188 (1974). The task of an appellate court in reviewing the sufficiency claim is to determine whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams, supra; Commonwealth v. Fostar, supra; Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). We believe there was sufficient evidence upon which the jury could base its determination of guilt in the instant matter.

Appellant also contends that his rights under the Fifth and Sixth Amendments of the United States Constitution were violated in that he did not receive the warnings as mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966). In this case, as noted, there was a Suppression Hearing and the court found as a fact that complete warnings were given prior to the commencement of police interrogation. This issue is initially to be determined by the hearing court and where, as here, those findings have ample support in the record, they will be sustained upon appellate review. *Com-*

*monwealth v. Stafford,* 451 Pa. 95, 101, 301 A.2d 600 (1974); *Commonwealth v. Sharpe,* 449 Pa. 35, 44, 296 A.2d 519, 524 (1972).

Lastly, assuming his position that adequate warnings were not given, appellant contends that the seizure of a trench coat being worn by appellant, under these circumstances, was constitutionally prohibited. In a novel argument, appellant attempts to equate the seizure of the coat, which was an article of clothing being worn by the appellant at the time of his arrest, with the eliciting of incriminatory remarks from an accused during custodial interrogation. The first weakness in this argument is that the finding of the court below was to the contrary. From the evidence presented, the court found that the warnings mandated by *Miranda* were in fact given.

More importantly, the seizure of the coat does not go to the protections provided by the Fifth and Sixth Amendments but rather to the rights protected under the Fourth Amendment of the United States Constitution. Whereas a party has a right to refuse to respond to questions which may result in incriminatory responses, an individual has no right to prevent a *reasonable* search of his person or clothing. Upon being summoned to the scene, homicide investigators were able to ascertain the identity of the appellant as the slayer. Thus, when the appellant was taken into custody, there was unquestionably probable cause to justify his arrest. The taking of the trench coat, which he was wearing at the time of his arrest, constituted a search incident to a lawful arrest. See *Chimel v. California,* 395 U.S. 752 (1969); *Preston v. United States,* 376 U.S. 364, 367 (1964); *Commonwealth v. Sharpe, supra; Commonwealth v. Brayboy,* 431 Pa. 365, 246 A.2d 675 (1968). The mere fact that the seizure of the coat was not contemporaneous with the seizure of the person of the appellant, but rather occurred after he had

been removed to the place of detention, does not prevent the seizure from being considered incident to the arrest. *United States v. Edwards,* 415 U.S. 800 (1974) ; *United States v. England,* 474 F.2d 1343 (4th Cir. 1973) ; *Wright v. Edwards,* 470 F.2d 980 (5th Cir. 1972).

Judgment of sentence affirmed.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.