J-A13024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES BUNDRIDGE, | |
| Appellant | No. 1583 WDA 2013 |

Appeal from the Judgment of Sentence Entered September 30, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000440-2013

BEFORE: PANELLA, SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                     **FILED JUNE 18, 2015**

Appellant, James Bundridge, appeals from the judgment of sentence entered following his convictions for possession of a controlled substance, possession with intent to deliver, and disorderly conduct. We affirm.

The trial court summarized the factual history of this case as follows:

> Ronald Croll, a police officer with the municipality of Monroeville, testified that on November 18, 2012 [A.S.] came into the police department to report that she had been assaulted by her live-in boyfriend, William Darnell Burkes. [A.S.] had obvious physical injuries. She told Officer Croll that she believed that [Mr. Burkes] was still at the residence she shared with him at 112 Cambridge Square Apartments. After documenting her injuries and taking her statement, Office[r] Croll proceeded to the Cambridge Square Apartments, intending to arrest Mr. Burkes. He was accompanied by an Officer Renk. He also requested back-up from a Sergeant McConnell and an Officer Pascarella, as he encountered them in the police station parking lot. They all then proceeded to the Cambridge Square Apartments.

Officer Croll had dealt with Mr. Burkes in the past and would know him to see him. He did not know if either Officer Pascarella or Sergeant McConnell knew him, but gave them a brief description indicating he was a black male, approximately 5'6" to 5'8" tall. He related that the incident was a domestic and that he intended to arrest [Mr. Burkes] for simple assault. Officer Croll said that he requested backup because he knew from prior experience that [Mr. Burkes] was elusive and evasive and would attempt to [elude] police if he knew he was going to be arrested.

When they arrived at the apartment, Officer[s] Croll and Renk went to the front of the building while Sergeant McConnell and Officer Pascarella traveled to the rear of the building. All officers, except Renk, were in uniform and driving marked police vehicles. When he approached the main door to the apartment building, Officer Croll heard some banging noise from within. As he entered the building, he saw an African American male walking away from him. Though he knew it was not [Mr. Burkes], he spoke briefly with him to determine if he had been with [Mr. Burkes] and could provide information. Just as he asked this individual's name, he heard a radio call from either Sergeant McConnell or Officer Pascarella, indicating they had arrested a person in the back. Sergeant Croll immediately ran out the back door where he observed a black male lying on the ground, handcuffed. He recognized that the person in custody was not Darnell Burkes and told the other officers this. He then returned to the apartment building, secured the help of a maintenance man to gain entry to the victim's apartment and arrested [Mr. Burkes].

Monroeville Police Officer Keith Pascarella also testified. He had been told by Officer Croll that the [sic] Burkes had a tendency to try to elude police. He was not familiar with Mr. Burkes and the only description he [had] was that he was a black male of medium height. Officer Pascarella described what happened as he and Sgt. McConnell reached the back of the building:

> As we approached the steps, Sergeant McConnell went upstairs, three or four steps to the landing. As soon as he got on top of the building, a black male came out of the back door, came out of the door. The door swung toward Sergeant McConnell. He

- 2 -

kind of side stepped that. He tried to grab the black male. He pushed through Sergeant McConnell, spinning back towards me. At that time, I was on the porch, tried to grab the male, missed him. I pulled my taser, turned and deployed it.

Officer Pascarella believed that the person trying to avoid him was Darnell Burkes. He told him to stop and, when he did not, used his taser to subdue him. He said that the actor was holding a bag and he looked in the bag as they were subduing the actor and placing him in handcuffs. Inside the bag, he observed large amounts of cash, what were obviously individually wrapped packets of heroin, a scale and other drug paraphernalia. After the actor was arrested, Officer Croll emerged and told them that the person they had in custody was not Darnell Burkes.

Trial Court Opinion, 6/25/14, at 3-5 (internal citations omitted).

Appellant was charged with one count each of possession of a controlled substance, possession with intent to deliver, and disorderly conduct. Prior to trial, Appellant filed a motion to suppress, seeking to "exclude the evidence obtained as a result of the unlawful search and seizure of [Appellant]." Omnibus Pretrial Motion, 4/15/13, at 4. Following a suppression hearing on July 18, 2013, the trial court denied Appellant's motion.

Thereafter, Appellant waived his right to a jury trial and proceeded to a nonjury trial. At the conclusion of trial, Appellant was adjudged guilty of all three counts. He was sentenced on September 30, 2013, to one year less one day to two years less two days, with credit for time served, for the possession with intent to deliver charge. A consecutive period of three years of probation was also imposed. He was paroled after serving forty-eight

- 3 -

hours.  No further penalty was imposed on the remaining two counts.  Order of Sentence, 9/30/13, at 1.

Appellant filed a timely notice of appeal.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1.    Did the trial court err in denying Appellant's motion to suppress when the warrantless arrest of Appellant was without probable cause?

2.    Did the trial court err in denying Appellant's motion to suppress when the warrantless search of a bag found next to Appellant was without probable cause?

Appellant's Brief at 4.

In both issues, Appellant argues that the trial court erred in denying his motion to suppress.  The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  ***Commonwealth v. Russo***, 934 A.2d 1199, 1203 (Pa. 2007) (citing ***Commonwealth v. Boczkowski***, 846 A.2d 75 (Pa. 2004)).  Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.  ***Id***.  However, it is also well settled that the appellate court is not bound by the suppression court's

conclusions of law. *Id*. (citing *Commonwealth v. Duncan*, 817 A.2d 455 (Pa. 2003)).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this [C]ourt.

*Commonwealth v. Benton*, 655 A.2d 1030, 1032 (Pa. Super. 1995) (citations omitted). In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003).

Appellant first argues that the totality of the circumstances did not establish sufficient probable cause to justify the arrest of Appellant. Appellant's Brief at 13. Appellant contends that the general physical description given of Mr. Burkes was not sufficient to justify the arrest of Appellant. *Id.* at 14-16. Appellant further asserts that the fact that Appellant exited the building at a high rate of speed and ran from the officers did not create probable cause. *Id.* at 17-19. Appellant maintains that the officers' mistaken belief that Appellant was Mr. Burkes did not create probable cause to justify the arrest of Appellant. *Id.* at 20-23.

An arrest must be supported by probable cause. *Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa. Super. 2010). An officer has probable cause to make a warrantless arrest "when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005). "Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.... Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent persons act." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (citations and quotation marks omitted).

Moreover, 18 Pa.C.S. § 2711(a) provides as follows:

**§ 2711. Probable cause arrests in domestic violence cases**

**(a) General rule.**--A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section 2504 (relating to involuntary manslaughter), 2701 (relating to **simple assault**), 2702(a)(3), (4) and (5) (relating to aggravated assault), 2705 (relating to recklessly endangering another person), 2706 (relating to terroristic threats) or 2709.1 (relating to stalking) against a family or household member although the offense did not take place in the presence of the police officer. A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence. For the purposes of this subsection, the term "family or household member" has the

meaning given that term in 23 Pa.C.S. § 6102 (relating to definitions).

18 Pa.C.S. § 2711(a)(emphasis added). Pursuant to 23 Pa.C.S. § 6102, "family or household member" is defined as follows:

Spouses or persons who have been spouses, persons living as spouses or who lived as spouses, parents and children, other persons related by consanguinity or affinity, current or former sexual or intimate partners or persons who share biological parenthood.

Given the totality of circumstances, the officers had probable cause to arrest Mr. Burkes. The victim advised Officer Croll that Mr. Burkes, a member of the victim's household, had assaulted her. [A.S.] had visible signs of having been assaulted. The offense of simple assault is amongst the enumerated offenses for which a warrantless arrest is permitted under 18 Pa.C.S. § 2711. Thus, the officers had the authority to conduct a warrantless arrest of Mr. Burkes pursuant to 18 Pa.C.S. § 2711(a).

Furthermore, pursuant to **Hill v. California**, 401 U.S. 797, 802 (1971), when police have probable cause to arrest one party and they reasonably mistake a second party for the first party, the arrest of the second party is valid. **See also Commonwealth v. Wright**, 867 A.2d 1265, 1268 (Pa. Super. 2005) (where wrong individual was mistakenly arrested, his subsequent convictions were upheld because officers had probable cause to arrest proper individual, and the mistaken arrest was reasonable and understandable under the circumstances of the case).

As noted, officers had probable cause to arrest Mr. Burkes. The officers mistakenly apprehended Appellant, believing him to be Mr. Burkes. Given the totality of circumstances, we conclude that their misidentification of Appellant was reasonable. Specifically, Officer Croll had given a brief physical description of Mr. Burkes that also matched Appellant's physical appearance. Appellant was at the same apartment building where the officers expected to find Mr. Burkes. Officer Croll advised the officers that, based on his prior behavior, Mr. Burkes would attempt to elude the officers. Appellant ran past the officers and refused to stop even when ordered to do so. Accordingly, the trial court's conclusion that the officers reasonably mistook Appellant for Mr. Burkes is supported by evidence of record. As such, we agree that the arrest of Appellant was valid. *Hill*, 401 U.S. at 802; *Wright*, 867 A.2d at 1268. Thus, Appellant's first claim lacks merit.

In his second issue, Appellant argues that the trial court erred in failing to suppress the drugs recovered from Appellant's bag. Appellant's Brief at 23. Appellant maintains that because his arrest was illegal, the evidence obtained incident to that arrest was fruit of the poisonous tree, and therefore, must be suppressed. *Id.* Appellant avers that even if Appellant's arrest was lawful, the search of the bag was illegal as it fails to meet the standard of a valid search incident to an arrest. *Id.* at 24. Appellant contends that a search of the bag cannot be justified as the contents of the bag were not in his immediate control. *Id.* While Appellant does not

dispute that the bag was in the immediate vicinity of his person at the time of the arrest, the bag was not searched until after Appellant was placed into custody, and therefore, Appellant asserts, there was no way Appellant could exercise control over the contents of the bag. *Id.* at 24-25.

"An officer may conduct a full custodial search of a suspect when the suspect is lawfully arrested." *Commonwealth v. Thompson*, 778 A.2d 1215, 1221 (Pa. Super. 2001). Thus, as long as an officer has probable cause to arrest at the time of the search, an officer is permitted to search an arrestee pursuant to a lawful arrest. *Id.* at 1222. The scope of the search encompasses the person and the immediate area in which the person was detained. *Commonwealth v. Dixon*, 997 A.2d 368, 380 n.18 (Pa. Super. 2010) (quoting *Commonwealth v. White*, 669 A.2d 896, 902 (Pa. 1995)). Our Supreme Court has stated the following with regard to the area that may be searched incident to an arrest:

> The Supreme Court of the United States and this Court have held that the scope of a search incident to arrest extends not only to the arrestee's person, but also into the area within the arrestee's "immediate control." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Shiflet*, 543 Pa. 164, 670 A.2d 128, 130 (1995). While the breadth of the area that falls within the arrestee's "immediate control" has been the subject of much debate, a warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Commonwealth v. Wright*, 560 Pa. 34, 742 A.2d 661, 665 (1999), reconsideration denied (February 25, 2000). The two historical rationales for the search incident to arrest exception to the warrant requirement are (1) the need to disarm the suspect

in order to take him into custody and (2) the need to preserve evidence for later use at trial.

**Commonwealth v. Taylor**, 771 A.2d 1261, 1271 (Pa. 2001) (internal footnote omitted).

Thus, we have held that the scope of such a search includes containers and clothing that are in the arrestee's possession at the time of his arrest. **See Commonwealth v. Guzman**, 612 A.2d 524, 527 (Pa. Super. 1992), *abrogated on other grounds*, **Commonwealth v. Bell**, 645 A.2d 211 (Pa. Super. 1994) (holding that satchel carried by arrestee at time of arrest was validly searched incident to the arrest); **Commonwealth v. Trenge**, 451 A.2d 701, 710 (Pa. Super. 1982) (holding police lawfully searched shoulder bag that was on appellant's person when he was arrested). Additionally, a warrantless search incident to an arrest must be substantially contemporaneous with the arrest. **Commonwealth v. Wright**, 742 A.2d 661, 665 (Pa. 1999) (citing **Shipley v. California**, 395 U.S. 818, 819 (1969)).

Here, Officer Pascarella testified that as Appellant was running out of the apartment building past the officers, Officer Pascarella noticed that Appellant was carrying a bag in his hand. N.T., 7/18/13, at 19. Officer Pascarella testified that after Appellant was tased, Appellant fell to the ground, and the bag was "laying on the ground next to him." **Id.** at 21. Immediately after Appellant was handcuffed, the officers searched the bag. **Id.** at 20-21. Within that bag, the officers found $11,000.00, four bricks of

suspected heroin in multiple loose packets, stamp bags, drug paraphernalia, a digital scale, cigar blunt, cigars, and other items. *Id.* at 21. Officer Croll came out of the building and advised the officers that they had the wrong individual in custody **after** the officers had searched the bag. *Id.*

As discussed above, we have determined that the arrest of Appellant was lawful. As such, the officers were permitted to conduct a search incident to that lawful arrest. The record reflects that Appellant was carrying a bag with him. The bag was in the immediate area in which Appellant was detained. Furthermore, the search of the bag was conducted substantially contemporaneously with his arrest. Also of importance is the fact that the search of the bag was conducted prior to the officers being notified that the person in custody, Appellant, was not Darnell Burkes. Thus, we conclude that the seizure of the contraband in Appellant's possession was not unlawful.

We also find no merit to Appellant's claim that the search of his bag was not lawful because he was handcuffed and therefore could not exercise control over the contents of the bag. Appellant's Brief at 24-25. As noted, a search incident to an arrest includes the search of the person and the immediate area in which the person was detained, as well as clothing and containers in the arrestee's possession at the time of arrest. *Taylor*, 771 A.2d at 1271; *Guzman*, 612 A.2d at 527; *Trenge*, 451 A.2d at 710. Additionally, this Court has held that "a search of a person conducted at a

later time (rather than contemporaneously with the actual arrest) is likewise valid." *Commonwealth v. Ventura*, 975 A.2d 1128, 1139 (Pa. Super. 2009).

In *Ventura*, the appellant was transported to the police station following a bar altercation. *Id.* 975 A.2d at 1132. Upon arrival at the station, police briefly searched him, but did not uncover anything. *Id.* Later, while monitoring Ventura in his holding cell *via* video surveillance, police witnessed him trying to put something in his jacket. *Id.* Police conducted a second search and recovered a knife inside the lining of one of Ventura's jacket pockets. *Id.* On appeal, Ventura argued that the trial court erred by denying suppression of the bloody knife seized from his jacket because police acted without a search warrant for that search. *Id.* at 1139. In support of his claim, Ventura stated that he was not wearing the jacket at the time police conducted the search. *Id.* In holding that the search of Ventura's jacket was a lawful warrantless search incident to his arrest, we provided the following explanation:

> The taking of the [coat], which [the arrestee] was wearing at the time of his arrest, constituted a search incident to a lawful arrest. The mere fact that the seizure of the coat was not contemporaneous with the seizure of the person of the appellant, but rather occurred after he had been removed to the place of detention, does not prevent the seizure from being considered incident to the arrest.

*Id.* (quoting *Commonwealth v. Bundy*, 328 A.2d 517, 520 (Pa. 1974));

*see also Guzman*, 612 A.2d at 527 (citing *United States v. Edwards*, 415

- 12 -

U.S. 800, 804 (1974)) ("The United States Supreme Court held that once an accused has been lawfully arrested and is in custody, anything that was subject to search and seizure at the time and place of arrest may be lawfully searched without a warrant, even after a substantial amount of time has lapsed following arrest."). Thus, even when an arrestee is in custody and his belongings are secure in police possession, they can be searched without a warrant as a search incident to arrest as long as they were subject to search and seizure at the time of the arrest. *Ventura*, 975 A.2d 1128 at 1139; *Guzman*, 612 A.2d at 527.

Accordingly, to the extent that Appellant's bag was searched immediately subsequent to his arrest and being handcuffed, the fact that these items were not in his possessive control does not make the search unlawful. Appellant had the bag with him when he attempted to elude the police, was tased and arrested. Therefore, the bag was subject to search and seizure at the time of his arrest. Thus, the search of this bag was a lawful search conducted incident to Appellant's arrest. The trial court properly denied Appellant's motion to suppress this evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2015