J-S38013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 195 WDA 2021 |

Appeal from the Judgment of Sentence Entered October 29, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000037-2019

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:              **FILED:  February 2, 2022**

Appellant, Luis Rodriguez, appeals *nunc pro tunc* from the judgment of sentence of life imprisonment, without the possibility of parole, imposed after a jury convicted him of various offenses, including first-degree murder, attempted murder, and two counts of aggravated assault.  On appeal, Appellant solely challenges the sufficiency of the evidence to sustain his conviction of first-degree murder.  After careful review, we affirm.

The trial court provided a detailed summary of the facts of Appellant's case, which we adopt herein.  ***See*** Trial Court Opinion (TCO), 4/29/21, at 3-7.  Briefly, Appellant's convictions stem from evidence that he traveled to his girlfriend's place of employment and shot her three times, including once in her head as she lay on the ground.  The victim died from her wounds.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant also shot his girlfriend's pregnant co-worker in the shoulder as she fled the scene. She survived her injuries.

On September 19, 2019, a jury convicted Appellant of the above-stated crimes. He was sentenced on October 29, 2019, to an aggregate term of life imprisonment, without the possibility of parole. His counsel filed a timely, post-sentence motion for judgment of acquittal, which the court denied. Appellant then filed a timely appeal, but his appeal was ultimately dismissed by this Court based on Appellant's failure to file a docketing statement. Appellant thereafter filed a *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, and counsel was appointed. Counsel subsequently filed a supplemental PCRA petition seeking the restoration of Appellant's direct appeal rights, which the court granted. Appellant then filed the present, *nunc pro tunc* appeal. He also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on April 29, 2021.

Herein, Appellant states one issue for our review: "Whether the trial court committed an abuse of discretion and/or error of law in denying Appellant[']s motion for judgment of acquittal and finding the Commonwealth presented sufficient evidence to convict … Appellant beyond a reasonable doubt of murder of the first degree?" Appellant's Brief at 3 (emphasis and unnecessary capitalization omitted).

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

Here, aside from stating the applicable law, Appellant's entire argument challenging the sufficiency of the evidence to support his first-degree murder conviction is as follows:

In the present case, the Commonwealth failed to present sufficient evidence and testimony that … Appellant committed an intentional killing. Pursuant to the statute, an intentional killing can be shown where an individual is poisoned – which did not occur in the present case; by lying in wait – which did not occur in the present case; or by any other kind of willful and deliberate premeditated action.

In the present case, the Commonwealth failed to present any evidence or testimony that there was any reason or rational motive for … Appellant to shoot [the victim]. As the Commonwealth's own witness testified, there was no evidence of domestic violence or even a fight between [the victim] and … Appellant on the day of her death. Further, … Appellant admitted to ingesting a significant amount of alcohol on that date prior to the shooting. … Appellant further admitted to not being able to recall the events that occurred that day because he was so under the influence.

It is clear from the evidence and testimony that … Appellant did not have a cognizable plan to murder the victim and he was not consciously aware of his actions.

Appellant's Brief at 8.

In assessing Appellant's cursory argument, we have reviewed the certified record, the Commonwealth's brief, and the applicable law. We have also considered the detailed opinion of the Honorable Joseph M. Walsh, III, of the Court of Common Pleas of Erie County. Based on Judge Walsh's summary of the facts established at Appellant's trial, **see** TCO at 3-7, we discern no abuse of discretion or error of law in his conclusion that the evidence was more than sufficient to prove that Appellant intentionally killed the victim. **See id.** at 3-9. Additionally, we agree with Judge Walsh that the evidence did not support Appellant's argument that he was so impaired by alcohol that he was incapable of forming the specific intent to kill. **Id.** at 9-10. Accordingly, we adopt Judge Walsh's opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2022

COMMONWEALTH OF PENNSYLVANIA  :  IN THE COURT OF COMMON PLEAS
                               :  OF ERIE COUNTY, PENNSYLVANIA

v.                            :  CRIMINAL DIVISION
                               :

LUIS RODRIGUEZ              :  DOCKET NO: 37-2019



## <u>1925(a) OPINION</u>

April 28, 2021:

### I.   **Procedural Background**

At approximately 2:00 p.m. on Saturday, November 24, 2018, Defendant, Luis Rodriguez, 48 years-old at the time, shot and killed his 25 year-old girlfriend, Alicia Stalheim, while she was working at Pizza Hut Restaurant on East 38th Street in Erie, Pennsylvania. He was apprehended a few hours later and admitted to shooting the victim. He was charged with criminal homicide / first degree murder, aggravated assault, reckless endangerment, possession of an instrument of crime, and carrying a firearm without a license. [1] He was convicted on all counts after a jury trial.[2] He was sentenced to life in prison on October 29, 2019.

On November 8, 2019, trial counsel, Allison M. Scarpitti, Esq., filed post-trial motions challenging the sufficiency of evidence on the specific intent to kill element of the first degree murder charge. Her motion for judgment of acquittal on the same grounds at trial was denied. The post-trial motions were denied by order dated November 12, 2019. A timely appeal

---

[1] He also shot and injured Ms. Stalheim's friend and co-worker, Ashleigh Fuhrman, for which he was convicted on the charges of attempted murder, aggravated assault, and lesser related charges. Those convictions are not challenged in this appeal.

[2] The second and third days of trial transcripts are referred to herein as "*Tr. 2, pg.* ___" for the proceedings on September 17, 2019; and "*Tr. 3, pg.* ___" for the proceedings on September 18, 2019. The first and fourth days of trial were devoted to jury selection and deliberation, and are not relevant here.

followed at 1825 WDA 2019. That appeal was dismissed on or about February 10, 2020 for counsel's failure to comply with Pa.R.A.P. 3517.

Defendant filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, on or about November 9, 2020, asserting, *inter alia*, ineffective assistance of counsel resulting in the dismissal of his direct appeal. PCRA counsel, William J. Hathaway, Esq., was appointed and a supplemental PCRA petition was filed on January 8, 2021. The supplemental PCRA petition re-asserted that defendant was deprived of his rights on appeal due to ineffective assistance of Attorney Scarpitti.

Defendant's direct appeal rights were reinstated by order entered January 28, 2021. New appeal counsel, Emily Mosco Merski, Esq., was appointed by order dated February 2, 2021. Defendant filed the within notice of appeal on February 8, 2021. After a court-granted extension, appeal counsel filed her statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) (1925(b) Statement), on April 15, 2021.[3]

## II.     Statement Matters Complained of On Appeal

Defendant's 1925(b) Statement asserts in pertinent part:

a.      The trial court erred as a matter of law and/or abused its discretion in denying the Defendant's Motion for Judgment of Acquittal when the Commonwealth failed to prove the essential element of premeditation necessary for a conviction of First Degree Murder.

     i.      Specifically, the Defendant asserts the Commonwealth failed to present evidence of domestic violence or that the Defendant was intoxicated at the time of the shooting.

---

[3] The 1925(b) statement was filed after the granted extension deadline, however, the court elected to consider the issues raised therein as though it were timely filed.

2

ii.   Further, the Commonwealth failed to establish any premeditative motive for the shooting

*(1925(b) Statement, ¶3).*[4]

## II.   Commonwealth's Evidence Relevant to First Degree Murder

### A.   Events Preceding the Shootings

Victim and Defendant spent the night before the shooting together at the victim's home. *(Tr. 3, pg. 34; Defendant's Exhibit 1).* The next morning, Defendant woke early and drove an hour and a half away, to Mahoning Valley Racetrack in Youngstown, Ohio, where he worked. *(Id.).* He finished working a couple of hours later and returned to Erie at about 12:00 p.m. *(Id.)* When he arrived in Erie he purchased a six pack of Coors Light. *(Tr. 2, pg. 176).* He also purchased Romolo[5] chocolates for victim. *(Tr. 3, pgs. 36).* He told investigators that he consumed approximately seven beers that day. *(Tr. 3, pg. 12).*

Shortly after purchasing the beer and chocolates, Defendant drove to the Pizza Hut where victim was working. Nearby security camera footage captured Defendant placing the chocolates and a note on the hood of victim's car and then driving away. *(Tr. 2. Pgs. 160-161; Commonwealth's Exhibit C).* A few minutes later, the victim came out to retrieve the items, and went back inside. *(Tr. 3, pgs. 20, 23, 35).* Defendant told investigators that he sent one or more texts to victim at or about the time he left the candy for her, and he became upset when she responded that she had already had Romolo's candy that morning. *(Tr. 3, pgs. 20, 36-37; Defendant's Exhibit 1).* The text messages were not recovered, but Defendant told investigators he became upset because victim punctuated her texts with the initialism "LOL," which stands for

---

[4] Paragraph 3(a)(i)'s reference to Commonwealth's failure to present evidence of intoxication or that Defendant engaged in domestic violence contradicts trial counsel's position at trial and in post-trial motions.

[5] Romolo Chocolates ("Romolo's") is a favorite local chocolate shop.

3

"laugh out loud," and he believed the victim was mocking or disrespecting him. (*Tr. 3, pgs. 20, 23-24, 36-37; Defendant's Exhibit 1*).

Defendant told the police that after he left the chocolates on the victim's car, he drove to her home in Wattsburg, approximately 10 miles away, to retrieve a hand gun he had purchased three months earlier, from under a mattress where he left it the night before. (*Tr. 3, pgs. 19, 36; Defendant's Exhibit 1*). According to Detective Hertel, one of the detectives who took Defendant's statement on the day of the murder, when asked why he got the gun, Defendant responded "she's done." (*Tr. 3, pgs. 19-20, 35*). The detectives took that to mean that he had had enough of victim's mistreatment of him and he intended to end it by killing her. (*Tr. 3, pgs. 36-37*). The defense disputed the detective's interpretation of Defendant's words and played the relevant segment of Defendant's statement in its entirety during cross-examination of Detective Hertel. (*Tr. 3, pg. 30; Defendant's Exhibit 1*). In the video, Defendant appeared alert and oriented, and demonstrated a fairly clear recollection of the day's events. (*Defendant's Exhibit 1*).

Video security camera footage showed Defendant returning to Pizza Hut at 1:36 p.m. (*Tr. 2, pgs. 162-164; Commonwealth Exhibit C*). He drove his vehicle to the back of a neighboring car wash and remained there for several minutes. (*Id.*). Then he then drove across the street and parked in a plaza parking lot, facing the restaurant. (*Tr. 2, pgs. 164-165; Commonwealth Exhibit C*). At 1:50 p.m., the footage shows victim exiting the restaurant from a back door to make a pizza delivery. (*Tr. 2, pgs. 166-167; Commonwealth Exhibit C*). As she drove away, Defendant followed her in his vehicle. (*Id.*). At 2:03 p.m., the victim returned to Pizza Hut, and parked her vehicle outside the back door. (*Tr. 2, pgs. 169; Commonwealth Exhibit C*). Defendant pulled his vehicle alongside hers and came to a stop. (*Id.*). As victim

4

exited her vehicle, Defendant quickly exited his vehicle and followed her inside. (*Id.*). Defendant showed no signs of intoxication while operating his vehicle or following victim into the Pizza Hut. (*Commonwealth Exhibit C*).

### B.    The Shootings

Victim's co-worker, Ashleigh Fuhrman, also shot that day, testified that she and the victim arrived for their shifts at Pizza Hut between 9:30 and 9:45 a.m. on Saturday, November 24, 2018, the day of the murder. (*Tr. 2, pg. 21*). She and victim were the only employees working that morning. (*Id.*). She did not notice anything unusual. (*Tr. 2, pg. 22*). Victim brought chocolates to work and shared them with Ms. Fuhrman. (*Tr. 2, pg. 23*). At around 12:00 or 12:30 p.m., victim went to her car to retrieve chocolates she said were left there by Defendant. (*Id.*). She seemed pleased to receive the chocolates. (*Id.*). There was no sign that victim and Defendant were not getting along. (*Tr. 2, pgs. 25-26*). At about 1:45 p.m., victim left for what would be her last pizza delivery. (*Tr. 2, pg. 26*). She returned about fifteen minutes later. (*Id.*). As she entered the restaurant through the back door, she told Ms. Fuhrman, "I need you to call the police, Luie's got a gun." (*Tr. 2, pg. 27*). Ms. Fuhrman went to the front of the store, near the customer entrance, to make the call. (*Id.*). As she was dialing the phone, Defendant appeared and pointed his gun at her stomach. (*Id.*). She begged him not to shoot and told him she was pregnant. (*Id.*). He was visibly shaking and had an extra fully loaded magazine clip in his hand. (*Tr. 2, pgs. 28-30, 48-49*). He turned around and walked back to the kitchen area, where victim was located. (*Tr. 2, pg. 27*). Ms. Fuhrman could not see victim, but she saw Defendant raise his gun and she heard a gunshot. (*Tr. 2, pgs. 27, 35*). She fled, slowly due to being eight months pregnant, out the front door, causing a buzzer to go off. (*Tr. 2, pgs. 27, 36*). As she walked around the outside of the building toward the back door, Defendant

5

approached from behind and shot her once in the shoulder. (*Id.*). He then went back inside the restaurant, through the front door. (*Tr. 2, pg. 36*). Ms. Fuhrman remained upright and mobile. She testified that while she was walking toward the back door of the restaurant to check on victim, she heard two more shots go off inside. (*Tr. 2, pg. 41*). When she opened the door, she saw victim laying on the floor face up, staring at the ceiling; she closed the door and went for help. (*Tr. 2, pg. 27*)

Coroner Eric Vey, MD, testified that victim was shot three times. (*Tr. 2, pgs. 81-83*). Once in the hip/pelvis area, once in the wrist, and once in the head. (*Id.*). Based on the nature and angle of the wounds, Dr. Vey opined that the hip and wrist shots occurred first and second, though he could not say in what order with certainty. (*Id.*). Neither of those shots were immediately fatal. (*Id.*). The hip shot likely caused victim to fall to the floor. (*Id.*). Dr. Vey was confident that the fatal head shot came last, because the wound angles revealed that victim was on the floor when the head shot occurred, and she could not have raised her arm to sustain the defensive wrist shot after being shot in the head. (*Id.*).

### C.    Defendant's Activity after the Shootings

Defendant left the murder scene in his vehicle within minutes of the shootings. (*Tr. 2, pg. 41*). Shortly thereafter, he bought another six pack of Coors Light beer. (*Tr. 2, pg. 176*). Text messages recovered from Defendant's phone, sent approximately two and a half hours after the murder to a recipient named "Brooks," stated: "I know, pa. Why she fucking with me," and "I tell her don't fuck with me. I am not like your husband." (*Tr. 3, pgs. 26-28*).

Defendant was apprehended on the day of the murder along Pennsylvania Interstate 90, near exit 16, heading west toward Ohio, at approximately 6:00 p.m. (*Tr. 2, pgs. 173-174*). Shortly thereafter he was taken to the Erie Police Station to be interviewed. (*Tr. 2, pg. 10*).

6

Detectives Hertel and Stokes, the interviewing officers, testified that Defendant was cooperative with the police and showed no signs of intoxication or diminished mental capacity during the interview. (*Tr. 2, pgs. 176-177; Tr. 3, pgs. 14-16*).

## III. Denial of Judgment of Acquittal

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa.Super. 2014) *citing Commonwealth v. Foster*, 33 A.3d 632, 634–35 (Pa.Super. 2011). Courts apply the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. [ ]. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. [ ]. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (*internal citations omitted*). Adopting the rationale of cases from the 5th Circuit Court of Appeals, the Superior Court has further explained:

> Whether the sufficiency of the evidence is questioned on motion for judgment of acquittal made at the close of the Government's case, at the close of all the evidence, or after the return of a guilty verdict, the test is the same: viewing the case in the light most favorable to the Government, could a reasonably-minded jury ... accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.

*Commonwealth v. Stahl*, 175 A.3d 301, 305 (Pa. Super. 2017) (*citations omitted*).

7

Trial counsel moved for judgment of acquittal at the close of the Commonwealth's case pursuant to Pa.R.Crim.P. 606(A)(1), and in post-trial motions, contending the Commonwealth failed to prove a necessary element of its first degree murder charge.[6] Specifically, trial counsel argued at trial: "Given the circumstances, I don't believe that the Commonwealth can prove or has proven that the defendant acted intentionally, consciously, intentionally [sic], and with malice." (*Tr. 3, pgs. 38-39*). Counsel raised the same issue in post-trial motions, where she also argued Defendant lacked the capacity to commit first degree murder due to voluntary intoxication.[7] (*Omnibus Post-Trial Motions, November 8, 2019, ¶3(D)*). In her 1925(b) Statement, appeal counsel added that the Commonwealth failed to prove "premeditative motive." (*1925(b) Statement, ¶3(a)*).

First degree murder is a criminal homicide committed by an "intentional killing." 18 Pa.C.S.A. §2502(a). "Intentional killing" is defined as "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. §2502(d). The elements of first-degree murder are: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011). This appeal challenges the Commonwealth's evidence on the third element, that defendant acted with a specific intent to kill.

---

[6] At trial, counsel made a similar argument with regard to the charge of attempted murder for the shooting of Ms. Fuhrman, however, that issue was not raised in post-trial motions or in this appeal.

[7] Defendant testified in his own defense, but never directly described his level of intoxication at the time of the murder. Instead, he appeared to infer that he was highly intoxicated because allegedly he could not remember much of what happened that day, and he drank "a lot" ("12-13") beers. (*Tr. 3, pgs. 46, 55, 57*). Defense counsel requested the standard jury instruction on voluntary intoxication as a defense to first degree murder, Pa.S.S.J.I. (Crim.) 8.308B, which request was granted. (*Tr. 3, pgs. 123-124*).

8

The Commonwealth can prove the specific intent to kill by circumstantial evidence. *Commonwealth v. Brown*, 711 A.2d 444, 449 (Pa. 1998). Further, proof of motive is not required for a conviction of first degree murder. *Commonwealth v. Zimmerman*, 504 A.2d 1329, 1335 *fn 4* (Pa. Super. 1986). Motive may, however, be probative of intent to kill if the evidence establishes a motive to kill. *Id., citing Commonwealth v. Tomoney*, 412 A.2d 531 (Pa. 1980) *and Commonwealth v. Robinson*, 364 A.2d 665 (Pa. 1976).

In the case at bar, there is no question that the Commonwealth's evidence was more than sufficient to prove specific intent to kill: Defendant became angry with victim well before the shooting; when asked why he retrieved his gun he said "she's done" and referenced his displeasure at her "LOL" texts; he stalked her for a half an hour before killing her; he shot her three times, not stopping until after he fired the fatal shot to the head;[8] he shot the victim once, left to shoot another victim, then returned to shoot her two more times; the second gunshot wound was defensive, from which the jury could reasonably infer that Defendant fired the third shot to succeed in killing her; texts sent by Defendant after the shooting were consistent with the Commonwealth's theory that Defendant acted in retaliation for what he perceived to be victim's mocking or disrespectful attitude toward him.

Additionally, there was no evidence, other than Defendant's testimony on his own behalf, that Defendant's consumption of beer in the hours or moments leading up to the shootings in any way impaired his capacity to form the requisite intent to kill.[9] Defendant was able to drive from

---

[8]  The fact-finder may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body. *Commonwealth. v. Houser*, *supra.*, at 1133–34.

[9] Evidence of intoxication may be offered by a defendant to reduce murder from a higher degree to a lower degree. 18 Pa.C.S. §308. However, the evidence must show the defendant was overwhelmed to the point of losing his faculties and sensibilities. *Commonwealth v. Breakiron*, 571 A.2d 1035, 1041 (Pa.

9

Ohio to Erie without incident. He was able to purchase beer and chocolates. He was able to write a note and leave it with the chocolates on victim's car. He was able to text victim, and drive back and forth to her home several miles away to retrieve his gun. He was able to operate his vehicle in busy traffic and maneuver in and out of two different parking lots without incident as he stalked victim prior to the shooting. He was able to react quickly to follow the victim into the restaurant. He was able to pursue the other victim on foot, shoot her in the shoulder from several feet away, and return inside the Pizza Hut to shoot victim two more times, with no sign of impairment.

## IV.  Conclusion

For all of the reasons set forth above, the Commonwealth's evidence was sufficient on all of the elements of the charge of first degree murder and Defendant's motion for judgment of acquittal was properly denied.

BY THE COURT:

Joseph M. Walsh, III, Judge

cc:  Emily Merski, Esq. (for Defendant)
Erie County District Attorney's Office
Court Administration

---

1990), *cert. denied*, 498 U.S. 881, (1990). The mere fact of intoxication does not give rise to a diminished capacity defense. *Commonwealth v. Hutchinson*, 25 A.3d 277, 312 (Pa. 2011).

10